United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRUCE KAISER,

Plaintiff,

v.

STANDARD INSURANCE COMPANY, and THE E-BAY, INC. LONG TERM DISABILITY PLAN,

Defendants.

No. C-05-4284 SC

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Bruce Kaiser ("Plaintiff" or "Kaiser") brought this action against the Standard Insurance Company ("Standard") and The E-Bay, Inc. Long Term Disability Plan (the "Plan") alleging a failure to extend disability benefits in accordance with Plan and ERISA regulations, 28 U.S.C. § 1001, et seq.

Presently before the Court are cross-motions for summary judgment. For the reasons stated herein, the Court hereby DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendants' Cross-Motion for Summary Judgment.

## II. BACKGROUND

Kaiser, currently aged 48, worked as the Vice President/ Director of Wine for Bonham & Butterfield, owned by E-Bay Inc., for approximately 14 years. Administrative Record ("AR") at 43.

He is a beneficiary of the E-Bay Inc., Plan. See e.g., AR at 368-69. Kaiser has a history of back pain of longer than 10 years, including several surgeries. AR at 237.

In 2002, Kaiser stopped working and sought long term disability benefits for "severe incapacitating pain, inability to sit/stand/walk for longer than 10 minutes." AR at 47. Kaiser's claim was processed by Innovative Care Systems, Inc. ("ICS"), a service hired by Standard Insurance. Id. Kaiser began receiving benefits in September of 2002, though the ICS Disability Claims Administrator stated that benefits would be subject to a limited pay period of 12 months. AR at 368-69. According to the Plan, pay periods for certain disabilities are limited, including "diseases or disorders of the cervical thoracic, or lumbosacral back and its surrounding soft tissue." AR at 9. However, benefits for "radiculopathies that are documented by electromyogram" are not subject to limitations. AR at 8.

In August of 2003, before the 12 month period expired, ICS had Dr. Mark Shih review Kaiser's records to determine whether sufficient evidence existed to support limitations or restrictions from light level work. AR at 133-35. Dr. Shih noted that he could not make "a firm determination of [Kaiser's] ability to work full-time in a light level occupation at the present time" because there was no recent physical exam on file. AR at 133. He wrote that an Independent Medical Examination ("IME") would be necessary to resolve the issue. Id.

In September of 2003, Dr. Aubrey Swartz performed the IME and sent a written report to ICS. AR at 141-52. Dr. Swartz reviewed

United States District Court
For the Northern District of California

Kaiser's medical records, performed a physical examination, and spoke with Kaiser about his health and medications. Id. Dr. Swartz concluded:

> Mr. Kaiser is capable of working an 8-hour day. There do not appear to be medical or physical restrictions to gainful employment within the physical capacities that I have noted.

AR at 144. As a result, ICS rejected Kaiser's claim on October 14, 2003. AR at 396-97. The letter stated that the IME indicated Kaiser could "no longer meet the definition of disability per the Employer's LTD Policy." AR at 397.

Kaiser appealed Standard's decision to terminate benefits and provided additional evidence of his physical condition. AR at 660-59, 541-42, 531-35. Dr. Shih reviewed Kaiser's appeal and concluded that he could return to work. AR at 308-11. Standard upheld its decision on March 3, 2005 and forwarded Kaiser's file to Standard's Quality Assurance Unit for an independent review. AR at 670-73. This portion of the appeal included a file review by Dr. Elias Dickerman. AR at 324-27. On May 5, 2005, Standard concluded its review and maintained its decision to terminate benefits. AR at 677-86. Plaintiff filed the present action on October 21, 2005. Docket No. 1.

## III. LEGAL STANDARD

The Ninth Circuit recently clarified the available standards of review in ERISA cases. "When a plan confers discretion, abuse of discretion review applies; when it does not, de novo review applies." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965 (9th Cir. 2006). While there are "no 'magic' words that

**United States District Court**
For the Northern District of California

conjure up discretion on the part of the plan administrator . . . [t]he Supreme Court has suggested that a plan grants discretion if the administrator has the 'power to construe disputed or doubtful terms' in the plan." Id. at 963, quoting Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989). The Ninth Circuit stated that "plan wording-granting the power to interpret plan terms and to make final benefits determinations-confers discretion on the plan administrator." Id. Specifically, a plan giving the administrator "the full, final, conclusive and binding power to construe and interpret the policy under the plan . . . [and] to make claims determinations" grants discretion. Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1159 (9th Cir. 2001).

Defendant's disability policy contains the following clause under the heading "Allocation of Authority":

> Except for those functions which the Group Policy specifically reserves to the Policyowner or Employer, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.

AR at 6. Importantly, the Ninth Circuit has held that this same plan language meets the criteria for the abuse of discretion standard of review. Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 (9th Cir. 1999). Thus, the Court's review will be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." Abatie, 458 F.3d at 967. This is appropriate because the "plan administrator both administers the plan and funds it." Id.

Though this standard of review entitles an ERISA

United States District Court
For the Northern District of California

administrator to substantial deference, that administrator "must have some reasonable basis for its decision denying benefits." Zavora v. Paul Revere Life Ins. Co., 145 F.3d 1118, 1123 (9th Cir. 1988). An ERISA administrator abuses its discretion if it renders a decision without explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or relies on clearly erroneous findings of fact. Bendixen, 185 F.3d at 944. The district court should uphold the decision of an ERISA plan administrator "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir. 2005) (internal quotations and citations omitted). The court may not substitute its judgment for that of the plan administrator unless the latter's decision was clearly erroneous in light of the available record, or there was no reasonable basis for it. Bendixen, 185 F.3d at 944; Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1473 (9th Cir. 1993).

## IV. DISCUSSION

Plaintiff asserts that Defendants abused their discretion by: (1) using the wrong definitions of "Own Occupation" and "Disability" under the Plan; (2) refusing to credit the treating physician's conclusions, (3) failing to demonstrate the credibility of Dr. Swartz, the independent medical examiner; and (4) committing procedural errors regarding the selection of consulting physicians and the provision of information to Plaintiff. Pl.'s Mot. at 10-17; Pl.'s Reply at 1-9.

**A. The Plan Definition of Own Occupation and Disability**

Plaintiff argues that Defendants incorrectly handled his claim by applying the wrong definition of "Own Occupation" and "Disability" under the Plan. The applicable section states:

> **Definition of Disability**
>
> During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.
>
> You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental disorder:
> 1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and
> 2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.
>
> Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy. . .
>
> Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

AR at 17-18. Contrary to Plaintiff's assertions, Defendants properly evaluated Kaiser's "Own Occupation" in their determination of whether he was "Disabled." Under the plain language of the Plan, Plaintiff's "Own Occupation" is defined as "any employment . . . that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer." AR at 18. As a result, Defendants were only required to evaluate Plaintiff's ability to perform jobs of the

same general character involving the same Material Duties as his own. The consulting physicians went further than required on this issue by identifying Kaiser's specific job as a wine appraiser and buyer. In this regard, all three reviewing physicians provided accurate descriptions of Plaintiff's occupation. Dr. Shih wrote, "Mr. Kaiser is a 47-year-old appraiser/buyer with a long-standing history of back pain. " AR at 311. Dr. Swartz's discussion with Kaiser revealed that "he was a department director for Butterfield's, and his occupation required appraising and selling wine." AR at 152. Dr. Dickerman wrote that "He is a 47-year-old wine appraiser/buyer." AR at 327. Furthermore, in their reports all the evaluating physicians opined that Kaiser's condition would not prevent him from working at his "Own Occupation," which only required light capacity physical activity. See AR at 144-45, 308-09, 325. Thus, Defendants properly considered Plaintiff's "Own Occupation" in their evaluation.

Plaintiff contends that the consulting physicians did not address whether he was unable to work "with reasonable continuity." AR at 18. On the contrary, the physicians opined that Kaiser could return to "working an 8-hour day" (AR at 144), "full time work at a light level" (AR at 309) or "light capacity activities" (AR at 325), which includes the ability to work on a consistent basis. Defendants' use of the physicians' reports constitutes a reasonable basis for the finding that Plaintiff could perform the material duties of his job with reasonable continuity.

Plaintiff also complains that Defendants failed to consider

that a qualification for his job was the "ability to travel approximately 25% of the time." AR at 341. Even though the ability to travel was not specifically addressed in each of the physicians' reports, that does not render Defendants' decision arbitrary or capricious. Dr. Shih indicated that in his opinion, Kaiser was capable of "sitting 6 hours, standing 3 hours, and walking 2 hours per day." AR at 309. Dr. Dickerman wrote that "some limitation in the amount of walking or standing may be appropriate if he tires. No other specific restrictions are appropriate." AR at 325. Kaiser informed Dr. Swartz that during the day he "drives a motor vehicle," after which Dr. Swartz opined that "Mr. Kaiser is capable of working an 8-hour day," including the ability to "frequently operate a motor vehicle." AR at 144-45. Based on the three medical opinions, Defendants had a reasonable basis for the determination that Plaintiff had the ability to travel and was not disabled under the Plan.

In analyzing Kaiser's capabilities and whether he met the definition of Disability, Defendants were entitled to rely on the consulting physicians' reports. The Ninth Circuit has held that "a decision grounded on any reasonable basis is not arbitrary or capricious, and that in order to be subject to reversal, an administrator's factual findings that a claimant is not totally disabled must be clearly erroneous." Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004) (quotations omitted). The doctors' reports and opinions constitute the reasonable basis for Defendants' decision which was not clearly erroneous.

**B. Consideration of Plaintiff's Reliable Evidence**

Plaintiff further asserts that Defendants failed to credit his reliable evidence, predominantly the medical reports and conclusions of Dr. Moskowitz, Kaiser's treating physician. On this topic, the Supreme Court has stated:

> Nothing in the Act itself . . . suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion.

Black & Decker Disability v. Nord, 538 U.S. 822, 831 (2003). While Dr. Moskowitz's report from July of 2004 gives a comprehensive history of Plaintiff's condition, Defendants were nonetheless entitled to rely on the findings of the three consulting physicians, all of whom concluded that Plaintiff was not disabled despite his lower back pain. AR at 144-52, 255-61, 308-11, 324-27.

**C. Dr. Swartz's Objectivity**

Plaintiff asserts that Defendants abused their discretion by using Dr. Swartz for the IME. Plaintiff bases his argument on a Ninth Circuit case, involving an IME by Dr. Swartz, which affirmed the District Court's decision to deny the insurer's motion for judgment as a matter of law. Hangarter v. Provident Life and Accident Ins. Co., 373 F.3d 998, 1011 (9th Cir. 2004). In Hangarter, as one part of its finding of administrator bias, the jury apparently credited testimony that the insurer "exhibited bias in selecting and retaining Dr. Swartz as the IME." Id. The jury heard testimony that Provident had retained Dr. Swartz nineteen times during a five year period and Dr. Swartz rejected

United States District Court
For the Northern District of California

the insured's claim in all thirteen cases involving total disability. Id.

Contrary to Plaintiff's assertion, the Hangarter decision does not demonstrate that Dr. Swartz is biased in favor of Standard. Hangarter involved a different insurance company, Provident, and there was evidence before the court that Provident had used Dr. Swartz repeatedly during a five-year period. See id. Plaintiff has not presented any evidence showing a similar relationship between Dr. Swartz and Standard. For the basis of his opinion, Dr. Swartz used the reports of treating and consulting physicians, statements made by Kaiser during the IME, and the results of a physical examination performed by Dr. Swartz. AR at 144-52. Thus, it was reasonable for Defendants to utilize the results of the IME, in addition to the reports of various other physicians, in their benefits determination. Plaintiff has failed to demonstrate that Standard's decision to rely on the findings of Dr. Swartz was clearly erroneous in light of the record or lacked a reasonable factual basis.

**D. Potential Procedural Violations**

Plaintiff also asserts that Defendants engaged in procedural violations under ERISA and Plan regulations. Plaintiff first argues that Defendants improperly used Dr. Shih both during the initial evaluation and during appeal. Pl.'s Mot. at 17. Defendants counter that the review by Dr. Dickerman satisfies the regulations. Defs.' Response at 11. The pertinent regulations state that the administrators have not provided a full and fair review unless they:

> (iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment;
>
> (v) Provide that the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual;

29 C.F.R. § 2560.503-1(h)(3)(iii) and (v).

During the initial evaluation in August of 2003, Dr. Shih reviewed Kaiser's file and concluded that he could not make a firm determination of Kaiser's ability to work full-time and that an IME "may be necessary to firmly determine this issue at the present time." AR at 133. Dr. Swartz then conducted the IME. AR at 144-52. During the appeal in February of 2005, Dr. Shih again reviewed Kaiser's file. AR at 308-11. In April of 2005, Standard conducted an additional review using Dr. Dickerman who opined that Kaiser was capable of working. AR at 324-27. The Court finds that the review by Dr. Dickerman is sufficient to satisfy the regulations for an appeal by an independent medical professional.

Plaintiff also argues that during the appeal process, Defendants failed to describe what information was necessary to perfect the claim as required by 29 C.F.R. § 2560.503-1(g)iii). Pl.'s Mot. at 17; Pl.'s Reply at 8. Plaintiff's argument on this point is without merit. When Defendants denied Plaintiff's claim they indicated that it was because Kaiser did not meet the

United States District Court
For the Northern District of California

definition of "Disability" under the Plan, they did not state that Kaiser had failed to perfect his claim. AR at 375-76. In any event, Standard's August 18, 2004 letter stated "we would expect to be provided with any documentation which supports that he has remained continuously precluded from performing his Own Occupation, as that occupation is performed in the general economy, since he initially ceased working." AR at 542. The problem with Plaintiff's claim was not that he had failed to submit a key document to qualify for coverage or appeal, it was that he did not have sufficient evidence to convince Standard that he was disabled and could not return to work. Though Plaintiff and his treating physician said otherwise, Standard found that Kaiser was not disabled based on reports from various physicians and Kaiser's own statements that his condition was improving and need for medication was declining. See AR at 677-86.

**V. CONCLUSION**

For the reasons described herein, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendants' Cross-Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: January 10, 2007

UNITED STATES DISTRICT JUDGE